IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| JAMES B. HICKOK,<br><br>              Plaintiff,<br><br>vs.<br><br>UNITED STATES POSTAL SERVICE,<br>JOHN POTTER, POSTMATER GENERAL<br>and DAVID MISNER<br><br>              Defendants. | Case No. 2:04-CV-573 DAK<br><br>**REPORT AND RECOMMENDATION**<br><br>Judge Dale Kimball<br><br>Magistrate Judge Brooke C. Wells |

Plaintiff, James Hickok *pro se*, filed the current action raising four counts that form the

basis of his complaint.  They are,

> Count #1 – Failure to accommodate
> Count #2 – Demotion
> Count #3 – Failure to accommodate – Denied advanced sick leave
> Count #4 – Providing false and misleading statements and falsifying government forms[1]

The applicable dates that these alleged acts occurred according to Hickok are Count 1 = 1996 –

6/26/00; Count 2 = 6/2/01; Count 3 = 7/31/01; and Count 4 = 11/24/03 – present.  Hickok argues

that Defendant's conduct is discriminatory with respect to five areas: disparate treatment,

handicap discrimination, retaliation, violation of privacy act, and that these acts occur under the

---

[1] Amd. Compl. p. 1.

whistle blower protection act and Rehabilitation Act.[2]  Defendants disagree and have filed a

consolidated motion to dismiss counts 1, 3 and 4, and for summary judgment on count 2.[3]  After

considering the parties' arguments, memoranda, and relevant case law, the court agrees with

Defendants' arguments and recommends that Judge Kimball dismiss Plaintiff's complaint and

grant summary judgment for the reasons articulated below.

## I. BACKGROUND

Plaintiff does not dispute Defendants' statement of facts as outlined in Defendants'

memorandum in support of its motions.  Accordingly, the court sets forth the following relevant

facts based on Defendants' statement of facts and Plaintiff's statement of facts where

appropriate.

### A.  Procedural Background

In June 2004 Plaintiff filed his initial complaint.  In September 2004 Plaintiff filed his

amended complaint with a jury demand.  Hickok then sought a default judgment against the

United States Postal Service (USPS) and other Defendants although Mr. Hickok had failed to

properly serve them.  This court denied Plaintiff's motion for default judgment and gave Plaintiff

until January 20, 2006 to properly serve Defendants.[4]  Plaintiff's case was initially dismissed

without prejudice but then reopened on January 31, 2007 after Plaintiff provided proof of service

---

[2] *See id.*
[3] Docket nos. 18, 21.
[4] Docket nos. 4, 10.

following the court established deadline of January 20, 2006.[5]  Defendants then filed the current

motions pending before this court.

## B.  Factual Background

In 1970 Plaintiff began working for the USPS.[6]  Plaintiff enjoyed working for the USPS

taking advantage of special training classes and receiving performance awards.  "In November

1994, Plaintiff suffered an on the job injury to his right shoulder."[7]  Plaintiff filed a claim for

workers' compensation that was accepted.  Plaintiff then "applied for and received a scheduled

award for a permanent impairment to shoulder."[8]  According to Plaintiff, since the 1994 injury

"he has been subjected to retaliation and handicap discrimination simply because he exercised

his right to file a claim for compensation."[9]

Plaintiff objected to several changes in staffing after returning to work following his first

shoulder surgery.  And, according to Plaintiff, it was during this timeframe that he was subjected

to inappropriate conduct and denied travel and training requests.[10]  In November of 1995

Plaintiff notified Defendant of a second surgery on his shoulder.[11]  Immediately following this

notice, Plaintiff was allegedly accused of poor performance by his supervisor.  After returning

from his second surgery Plaintiff was issued a letter of warning for something that had allegedly

---

[5] Docket no. 13.
[6] *See* Compl. p. 2.
[7] *Id.*.
[8] *Id.*
[9] *Id.*
[10] *See id.*
[11] *See id.* p. 3  ¶ 2.

occurred previously.

In September 1996 Plaintiff received a scheduled award for his shoulder and "immediately experience[d] problems with McIssac."[12]  Plaintiff's complaints about a hostile working environment were forwarded onto the District Manager.  Plaintiff then applied for, and accepted, a job as Manager in Sandy, Utah to escape McIssac.[13]  In September 1998 Plaintiff was recruited for a position in Denver, Colorado.  While working in Denver, Plaintiff experienced emotional and physical problems that required intermittent medical treatment.[14]  Upon returning to the Sandy, Utah post office in April 1999, Plaintiff suffered further physical problems allegedly from the long hours he was required to work.

Plaintiff suffered a panic attack while at work on October 29, 1999.[15]  Plaintiff was a Customer Services Manager at the time with an annual pay rate of EAS 21.[16]  On November 2, 1999, Plaintiff filed a claim for compensation with the Department of Labor (DOL) for his attack.[17]  The DOL denied Plaintiff's claim.[18]  Plaintiff was released to return to work on June 26, 2000 with the following restrictions: (1) no direct or daily contact with USPS supervisors Leo McIssac or Jeff Davis; (2) no position in the Sandy Post Office; and (3) no managerial

---

[12] *Id.* ¶ 5.
[13] *See id.* p. 4  ¶ 7.
[14] *See id.* ¶ 9.
[15] *See id.* p. 5 ¶ 13.
[16] *See id.* p. 4 ¶ 12.
[17] *See id.* p. 5 ¶ 14.
[18] *See id.* ¶ 17.

position.[19]  Defendants informed Plaintiff on several occasions before he returned to work that

he could be accommodated upon his return.[20]

Plaintiff remained off work until December 20, 2000 when the USPS provided him with

an accommodation by giving him a temporary assignment for creating carrier route maps.[21]  This

temporary funded detail position was at the EAS 21 level.  The USPS attempted to find a more

permanent EAS Level 21 position that met Plaintiff's work restrictions, but was unsuccessful.[22]

On May 31, 2001, David Misner, Manger of the Post Office Operations for the Salt Lake City

District, notified Plaintiff by letter that the USPS was officially downgrading his position-

effective June 2, 2001-from an EAS 21 to an EAS 16.[23]  The letter explained that the decision to

downgrade Plaintiff was made because Plaintiff's medical restrictions prohibited him from

returning to work as Customer Services Manager in the Sandy Post Office and that this position

needed to be filled.[24]  The previous position that Plaintiff occupied, creating carrier route maps,

was filled by another individual, Keith Bliss.  Mr. Bliss testified that he was told the position was

funded for at least another year, which was contrary to what Plaintiff was allegedly told by

Defendants.[25]

On June 1, 2001, the day before Plaintiff's downgrade became effective, Plaintiff

---

[19] *See id.*
[20] *See id.* ¶¶ 15-17.
[21] *See id.* ¶¶ 19-21.
[22] *See id.* p. 8 ¶ 1.
[23] *See id.* ¶ 4.
[24] *See id.* letter attached at Tab 2 p. 12.
[25] *See id.* p. 9 ¶ 5.

suffered a second panic attack while at work.[26]  On June 11, 2001, Plaintiff filed a claim for

compensation with the DOL based upon this panic attack.[27]  The DOL eventually accepted this

claim.[28]

On June 5, 2001, Plaintiff requested 30 days of advanced sick leave.[29]  Plaintiff's request

was denied on July 3, 2001, because Plaintiff refused to sign a release allowing the USPS to

obtain additional information from Hickok's medical provider, and because the USPS

determined that it was unlikely Plaintiff would return to work and therefore be able to repay the

advanced sick leave.[30]

On July 14, 2001, Plaintiff was released by Dr. Schneiman to return to restricted duty on

July 30, 2001.[31]  Plaintiff reported for duty on July 30, 2001 and currently works for the USPS in

an EAS 16 position.[32]  Plaintiff also wrote Senator Orin Hatch seeking assistance with his

situation.  Senator Hatch, however, has not intervened.

Plaintiff has had various proceedings before the Merit Systems Protection Board

(MSPB).  These include: On August 14, 2000 Plaintiff appealed to the MSPB complaining that

the USPS did not accommodate his medical condition and forced him to take leave beginning

[26] *See id.* p. 9 ¶ 1.
[27] *See id.* ¶ 2.
[28] *See id* p. 12 ¶ 3.
[29] *See id.* letter attached at Tab 3 p. 1.
[30] *See id.* p. 10 ¶¶ 3-4.
[31] *See id.* ¶ 5.
[32] *See id.* ¶ 11.

August 7, 2000.[33]  The MSPB denied this appeal on August 3, 2004.

On June 23, 2001, Plaintiff filed an appeal before the MSPB complaining about being downgraded, reassigned, and discriminated against despite his disability.[34]  Plaintiff alleged that these actions were retaliatory for protected activities, to wit, prior filings with the Equal Employment Opportunity Commission (EEOC) and filing for disability claims.  The MSPB denied this appeal on March 31, 2004.  Plaintiff timely sought review of this decision by the EEOC and on May 20, 2004, the EEOC found no evidence of discrimination and concurred with the MSPB's decision.

On August 13, 2001, Plaintiff complained to the MSPB that the USPS had not accommodated his medical condition and retaliated against him by denying him advanced sick leave and constructively suspending him in July 2001.[35]  This appeal was denied by the MSPB on August 3, 2004.

## II. DISCUSSION

Hickok sets forth the following Counts that form the basis of his complaint.[36]

Count #1 – Failure to accommodate
Count #2 – Demotion
Count #3 – Failure to accommodate – Denied advanced sick leave
Count #4 – Providing false and misleading statements and falsifying government
forms[37]

---

[33] MSPB Appeal Form Def.'s Mem. in Supp. Ex. A.

[34] MSPB Appeal Form Def.'s Mem. in Supp. Ex. B.

[35] MSPB Appeal Form Def.'s Mem. in Supp. Ex. C.

[36] Amd. Compl. p. 1.

[37] *See id.*

Plaintiff argues that Defendant's conduct is discriminatory with respect to five areas: (1)

Disparate treatment; (2) Handicap discrimination; (3) Retaliation; (4) Violation of Privacy Act;

and (5) Whistle Blower Protection.[38]

Pursuant to Federal Rules 12(b)(1), 12(b)(6) and 56(c), Defendants the USPS, John Potter

Postmaster General, and USPS Manager David Misner, seek to dismiss Counts 1, 3 and 4 of

Plaintiff's Amended Complaint and all claims against Mr. Misner.  Defendants also seek

summary judgment on Count 2 of Plaintiff's Amended Complaint.

**A.  Standard Of Review**

When reviewing plaintiff's allegations, the court must construe the *pro se* complaint

liberally.[39]  The court, however, "will not supply additional factual allegations to round out a

plaintiff's complaint or construct a legal theory on a plaintiff's behalf."[40]  The broad reading of a

plaintiff's complaint "does not relieve the plaintiff of the burden of alleging sufficient facts on

which a recognized legal claim could be based."[41]  Not every fact need be described in specific

detail, but "conclusory allegations without supporting factual averments are insufficient to state a

claim on which relief can be based."[42]

Federal rule 12(b)(1) directs that a case should be dismissed for a "lack of jurisdiction

---

[38] *See id.*
[39]  *See Haines v. Kerner*, 404 U.S. 519, 519-21 (1972).
[40] *Whitney v. New Mexico*, 113 F.3d 1179, 1173-74 (10th Cir. 1997).
[41] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).
[42] *Id.*

over the subject matter."[43]  Few principles of federal jurisprudence are more firmly established

than the tenet that "federal courts . . . are courts of a limited jurisdiction."[44]  Courts "possess only

that power authorized by Constitution and statute . . . ."[45]  Thus, if this court lacks jurisdiction

over the subject matter of any of Plaintiff's claims, then they must be dismissed.

Federal rule 12(b)(6) provides that a court may dismiss a case if a party "fail[s] to state a

claim upon which relief can be granted."[46]  A rule 12(b)(6) motion should not be granted "unless

it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which

would entitle him to relief."[47]  In determining whether to grant such a motion, the court accepts

as true all well-pleaded factual allegations and views them in the light most favorable to the

nonmoving party.[48]

A 12(b)(6) motion must be converted to a motion for summary judgment if "matters

outside the pleadings are presented to and not excluded by the court, . . . and all parties [are]

given reasonable opportunity to present all material made pertinent to such a motion by Rule

56."[49]  Facts that are subject to judicial notice, however, may be considered without converting a

motion to dismiss into a motion for summary judgment.[50]  Moreover, some items outside the

---

[43] Fed. R. Civ. P. 12(b)(6).
[44] *Turner v. Bank of N. Am.*, 4 U.S. 8. 8 (1799).
[45] *Kokkkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).
[46] Fed. R. Civ. P. 12(b)(6).
[47] *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see Ash Creek Mining Co. v. Lujan*, 969 F.2d 868, 870 (10th Cir. 1992).
[48] *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Ash Creek*, 969 F.2d at 870.
[49] Fed. R. Civ. P. 12(b).
[50] *See* 27A Fed. Proc., L.Ed. § 62:520 (2003); *Anderson v. Simon*, 217 F.3d 472, 474-475 (7th Cir. 2000) (stating that a "district court may take judicial notice of matters of public record without converting the 12(b)(6) motion into

body of the complaint, such as exhibits attached to the complaint, will not trigger the conversion

of a Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment.[51]

Summary judgment is appropriate "if the pleadings, depositions, answers to

interrogatories, and admission on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law."[52]  A party seeking summary judgment "bears the initial responsibility of informing the

. . . court of the basis for its motion, and identifying those portions of 'the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any, which it

believes demonstrates the absence of a genuine issue of material fact."[53]

To defeat a motion for summary judgment a plaintiff "must do more than simply show

that there is some metaphysical doubt as to the material facts."[54]  Instead, the plaintiff must come

forward with some evidence establishing his claim.[55]  "The mere existence of a scintilla of

evidence in support of the nonmovant's position, however, is insufficient to create a dispute of

fact that is 'genuine.'  An issue of material fact is genuine only if the nonmovant presents facts

such that a reasonable jury could find in favor of the nonmovant."[56]  Once a movant

demonstrates an absence of a genuine issue of material fact, a nonmovant cannot simply rest

---

a motion for summary judgment"); *Van Woudenberg v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000).

[51] *See*  27A Fed. Proc., L.Ed. § 62:520.

[52] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[53] *Id.* at 323.

[54] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[55] *See id.*

[56] *Planned Parenthood of Rocky Mountains Services Corp. v. Owens*, 287 F.3d 910, 916 (10th Cir 2002) (citation and quotations omitted).

upon his or her pleadings, "but must set forth specific facts showing that there is a genuine issue

for trial."[57]   Accordingly, Hickok has the burden of setting forth specific facts which could

persuade a reasonable fact-finder to rule in his favor.

The court notes that attached to Plaintiff's complaint are an extensive collection of letters,

reports, forms, and memoranda that both parties cite to in support of their arguments.  As noted

by Defendants, "[e]xhibits attached to a complaint and matters of public record are properly

treated as part of the pleadings for purposes of ruling on a motion to dismiss."[58]   The court

agrees.  Therefore, the court treats Plaintiff's attachments as part of his complaint and finds no

need to convert Defendants' 12(b)(6) motion into a motion for summary judgment.[59]

**B.  The Claims Against USPS Manager David Misner Should be Dismissed**

As noted by Defendants, Plaintiff's Amended Complaint fails to specify exactly which

counts are brought against David Misner.[60]   Defendants argue that all claims against Misner

should be dismissed pursuant to Rule 12(b)(1) because he is not the head of any government

agency.  Misner is the Manager of Post Office Operations for the Salt Lake City District.[61]   Title

VII requires that claims of handicap discrimination against a federal government agency-like

those in Plaintiff's case-be brought against "'the head of the department, agency, or unit.'"[62]

---

[57] *Cudjoe v. Independent School Dist. No. 12*, 297 F.3d 1058, 1062 (10th Cir. 2002) (citation and quotations omitted).
[58] Mem. in Supp. p. 6.
[59] *See* 27A Fed. Proc., L.Ed. § 62:520.
[60] *See id*. p. 1 fn. 1.
[61] Amend. Compl. p. 8 ¶ 4.
[62] *Johnson v. U.S. Postal Service*, 861 F.2d 1475, 1478 (10th Cir. 1988) (quoting 42 U.S.C. § 2000e-16(c)).

Misner is not the head of any agency and not a proper defendant.  Thus, Plaintiff's claims

brought against him should be DISMISSED pursuant to Rule 12(b)(1).

## C.  Plaintiff Is Not Disabled Within the Meaning of the Disability Act or Rehabilitation Act

It is unclear whether Plaintiff brings his claims under the Rehabilitation Act,[63] or the

American Disabilities Act (ADA),[64] because Plaintiff fails to state the statue under which he

brings his claims.  But, "[t]he ADA defines a disability in substantially the same terms as the

[Rehabilitation] Act defines an individual with handicaps (now an individual with a

disability)."[65]  Thus, under either Act, Hickok must demonstrate that he is an individual with a

disability.[66]  Here, Plaintiff fails to make the required showing under either Act.[67]  For ease of

reference, the court considers Plaintiff's case under the Rehabilitation Act because this action is

not against a private employer,[68] but its discussion of disability is equally pertinent to the

ADA.[69]

---

[63] 29 U.S.C. 701, et seq.

[64] 42 U.S.C. §§ 12101-12213.

[65] *Bolton v. Scrivner, Inc.*, 36 F.3d 939, 942 (10th Cir. 1994) (quoting *Chandler v. City of Dallas*, 2 F.3d 1385, 1391 (5th Cir. 1993)) (first alteration added).

[66] *See id.*; *Spielman v. Blue Cross and Blue Shield of Kan., Inc.*, 33 Fed.Appx. 439 (10th Cir. 2002) (considering employer's claims of failure to accommodate under the ADA); *Welsh v. City of Tulsa*, 977 F.2d 1415 (10th Cir. 1992) (concluding that an employee was not disabled under the Rehabilitation Act).

[67] Because the standards used to determine whether an employer violated

[68] *See Nielson v. Moroni Feed Co*, 162 F.3d 604, 608, n.7 (10th Cir. 1998) ("The ADA defines disability in essentially the same terms as the Rehabilitation Act.  The ADA enlarges the scope of the Rehabilitation Act to cover private employers, but the legislative history of the ADA indicates that Congress intended judicial interpretation of the Rehabilitation Act to be incorporated by reference when interpreting the ADA.")

[69] Because the standards used to determine whether an employer violated the Rehabilitation Act are the same as those for an ADA determination courts rely on cases decided under either statute in deciding Rehabilitation Act claims.  *See Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1130 (10th Cir. 2003) (discussing the Americans with Disabilities Act, which defines "disability" in the same way as the Rehabilitation Act); *Woodman v. Runyon*, 132 F.3d 1330, 1398 n.8 (10th Cir. 1997).

An individual is considered "handicapped" under the Rehabilitation Act if they have a

physical or mental impairment that substantially limits one or more major life activities.[70]  "To

demonstrate that an impairment 'substantially limits' the major life activity of working, an

individual must show 'significant[] restrict[ion] in the ability to perform either a *class of jobs* or

a *broad range of jobs in various classes* as compared to the average person having comparable

training, skills and abilities.'"[71]  Thus, "'[t]he inability to perform a single, particular job does

not constitute a substantial limitation in the major activity of working.'"[72]

To establish a *prima facie* case of disability discrimination, Hickok must allege "(1) that

he was an individual who had a disability within the meaning of the statute; (2) that the

[employer] had notice of his disability; (3) that with reasonable accommodation he could

perform the essential function of the position . . . .; and (4) that the [employer] refused to make

such accommodations."[73]  Here, the court finds that Plaintiff fails to make a *prima facie*

showing.

In this case, Hickok contends that he is disabled, and that Defendants failed to

accommodate him after June 26, 2000 and on July 31, 2001 (part of Counts 1 and 3

respectively).  In support of his disability discrimination claims Plaintiff contends that his is a

---

[70] *See Bolton v. Scrivner Inc.*, 36 F.3d 939, 942 (10th Cir. 1994).
[71] *Id.* (citing 29 C.F.R. § 1630.2(j)(3)(i)).
[72] *Id.*
[73] *Spielman v. Blue Cross and Blue Shield of Kan., Inc.*, 33 Fed.Appx. 439, 443 (10th Cir. 2002) (quoting *Rhodes v. F.D.I.C.*, 257 F.3d 373, 387 n. 11 (4th Cir. 2001).

qualified handicapped person because of three medical conditions: (1) his shoulder injury;[74] (2) gastrointestinal problems that allegedly limit major life functions;[75] and (3) panic attacks.[76] While the court is sympathetic to Plaintiff's ailments, the court finds that these medical conditions, whether considered separately or in conjunction, do not fall within the meaning of the Act because they do not limit a major life activity.  And, Plaintiff fails to demonstrate that there is a significant restriction placed upon his ability to perform either a class of jobs or a broad range of jobs as compared to other average individuals.[77]  Although Plaintiff returned to work with some restrictions, *see supra*, the inability to work in a particular set of circumstances, such as with a certain manager, does not substantially limit a major life activity.

Finally, the court wishes to point out that "<u>an employer is not required to always provide the employee with the best possible accommodations or in the specific manner the employee requested</u>."[78]  An employer retains "broad discretion in determining which alternative accommodation should be provided."[79]  Accordingly, simply because the USPS did not continue to allow Hickok to function as a map maker, or give him the position he desired, does not mean that they did not accommodate him.

Therefore, Counts 1 and 3 should be dismissed pursuant to Rule 12(b)(6).

---

[74] *See* Op. p. 2.
[75] *See id.* p. 6.
[76] *See id.* p. 8.
[77] *See Bolton*, 36 F.3d at 942.
[78] *Selenke v. Medical Imaging of Colo.*, 248 F.3d 1249, 1261 (10th Cir. 2001) (emphasis added).
[79] *Id.* (citing 29 C.F.R. § 1630.9).

**D.  The Whistleblower Protection Act Does Not Cover Plaintiff**

From a plain reading of the Whistleblower Protection Act it is clear that the USPS is not covered by the Act.[80]  Plaintiff even admits this Act does not cover postal employees in both his Complaint and opposition memorandum.[81]  Nevertheless, despite these admissions and the language of the statue, Plaintiff argues that Defendants' conduct was discriminatory in violation of the Whistleblower Protection Act.  Specifically, Plaintiff states that the Postmaster General encouraged USPS employees to engage in whistle blowing activities.[82]  And, Plaintiff cites to internal regulations released by the USPS that also encourage this type of activity.[83]  Therefore, according to Plaintiff, he is covered by the Whistleblower Protection Act.

The court finds Plaintiff's arguments unpersuasive.  Encouragement by the Postmaster General and internal guidelines cannot overcome congressional intent that is clearly manifest in statute to exclude the USPS from the Whistleblower Protection Act.[84]  Therefore, the remaining aspects of Count 3 concerning alleged violations of this Act should be dismissed for failure to state a claim upon which relief may be granted.

**E.  Plaintiff Failed to Meet the Statue of Limitations**

At best, Plaintiff did not file his Privacy Act claim until June 2004 when he filed his

---

[80] *See Booker v. Merit Systems Protection Bd.*, 982 F.2d 517, 519 (Fed. Cir. 1992) ("The definition of 'agency' in section 2302(a)(2)(C) does not include the United States Postal Service, . . . .").
[81] *See* Compl. p. 10 ¶ 6; Op. p. 30.
[82] *See* Op. p. 30-31.
[83] *See id.*
[84] *See Booker*, 982 F.2d 517.

complaint.  Plaintiff does not dispute the fact that he became aware of the alleged false

statements concerning his workers' compensation claims in July 2001.  The statue of limitations

period for a cause of action under the Privacy Act begins to run when a plaintiff first becomes

aware of the alleged errors in government records.[85]   And, even if there are continued violations-

as Plaintiff alleges in this case-they do not toll the statute of limitations.[86]

Therefore, Count 4 should be dismissed.

**F.  Summary Judgment Should be Granted as to Count 2**

Pursuant to 42 U.S.C. § 12203 it is unlawful to  "discriminate against any individual

because such individual has opposed any act or practice made unlawful by this chapter or

because such individual made a charge, testified, assisted, or participated in any manner in an

investigation, proceeding, or hearing . . . ."[87]  To establish a *prima facie* case of retaliation

Plaintiff must show: (1) that he engaged in an activity protected by statute; (2) that he was

subject to an adverse employment action either following or contemporaneous with the protected

activity; and (3) that there was a causal connection between the protected activity and the

subsequent adverse action.[88]

Here, Plaintiff argues that the USPS retaliated against him by demoting him from an EAS

21 position to an EAS 16 position.  In support of this claim Plaintiff offers the following: an

unsupported allegation that Misner failed to follow proper procedures when issuing the decision

---

[85] *See Harrell v. Fleming*, 285 F.3d 1292, 1293 (10th Cir. 2002).
[86] *See Diliberti v. United States Dept. of Air Force*, 817 F.2d 1259, 1261 (7th Cir. 1987).
[87] 42 U.S.C. § 12203(a).
[88] *See Selenke v. Medical Imaging of Co.*, 248 F.3d 1249, 1264 (10th Cir. 2001).

letter concerning the demotion; that alternatives were not considered although Plaintiff was already perceived as handicapped; that medical evidence was not considered in making the reassignment; that others filled his previous "accommodated position" following his demotion; and an outline of the time frames involved between the adverse decision and the protected activities.

In spite of all the evidence and assertions, Plaintiff fails to provide much more than a timeline in establishing a casual connection between the protected activities and the alleged adverse action.  A timeline, without more, fails in this case to meet the "burden of establishing a causal connection between his protected activity and his demotion."[89]  And, failure to meet this burden results in a failure to make out a *prima facie* case of retaliation.[90]  Moreover, the court finds that the remaining allegations in support of this claim are insufficient to raise a genuine issue of material fact concerning the alleged retaliation.  Even in viewing the evidence and "inferences therefrom in the light most favorable to [Plaintiff],"[91] no reasonable jury could return a verdict for Plaintiff on his retaliation claim.  Therefore, summary judgment is appropriate as to Count 2.

## G.  Any Remaining Allegations Should be Dismissed

In his opposition, Plaintiff appears to raise new allegations that are not in his complaint, such as retaliation because of the filing of the instant complaint.  These are not properly before

---

[89] *Coons v. Secretary of U.S. Dept. of Treasury*, 383 F.3d 879, 887 (9th Cir. 2004).
[90] *See id.*
[91] *Cudjoe v. Independent School Dist. No. 12*, 297 F.3d 1058, 1062 (10th Cir. 2002).

the court and therefore should be dismissed.

Finally, as noted *supra*, Plaintiff has had extensive proceedings before the EEO and the MSPB. Some of the issues before those bodies were settled and therefore, they are not the proper basis for an appeal to this court.

## RECOMMENDATION

Based on the foregoing, it is hereby recommended that Defendants' motions be GRANTED.

Copies of the foregoing report and recommendation are being mailed to all parties who are hereby notified of their right to object. Any objection must be filed within ten days after receiving this Report and Recommendation. Failure to object may constitute a waiver of objections upon subsequent review.

DATED this 8th day of November, 2006.

Brooke C. Wells
United States Magistrate Judge